No. 2—10—0143
Opinion filed March 16, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 09—DT—4556 |
| CAROL A. ARONSON, | ) ) | Honorable Robert G. Kleeman, |
| Defendant-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion. Justices McLaren and Burke concurred in the judgment and opinion.

**OPINION**

On January 8, 2010, after a hearing, the trial court granted the petition of defendant, Carol A. Aronson, to rescind the statutory summary suspension of her driving privileges. The State appeals, arguing that, in light of the trial court's finding that the arresting officer's testimony was credible, the court erred in finding that the State's inability to produce the video of defendant's performance on field sobriety tests required the suspension revocation. For the following reasons, we affirm.

I. BACKGROUND

On November 15, 2009, defendant was arrested for three alleged violations of the Illinois Vehicle Code (Code): (1) DUI (625 ILCS 5/11—501(a)(2) (West 2008)); (2) speeding (625 ILCS

5/11—601(b) (West 2008)); and (3) improper lane usage (625 ILCS 5/11—709(a) (West 2008)). On December 11, 2009, defendant petitioned pursuant to section 2—118.1 of the Code (625 ILCS 5/2—118.1 (West 2008)) to rescind the statutory summary suspension of her driving privileges, challenging, among other things, whether the arresting officer had reasonable grounds to believe that she was driving under the influence of alcohol. A hearing on the petition was scheduled for January 8, 2010.

### A. Motion for Sanctions

Prior to the hearing on the petition, defendant moved for sanctions against the State. According to the motion, on December 30, 2009, defendant subpoenaed the Oak Brook police department, requesting any videos relating to her case. On January 8, 2010, the police department's court-liaison officer informed defendant that the video of her stop and performance on the field sobriety tests was "not viewable." Defendant argued in her motion for sanctions that the State's failure to produce the video was tantamount to the loss or destruction of evidence and, therefore, the trial court had the discretion to sanction the State's unreasonable noncompliance with discovery. Defendant requested that, in light of the State's failure to properly preserve and produce the evidence, the court should, as a sanction, grant defendant's petition to rescind the statutory summary suspension.

On January 8, 2010, the trial court held a hearing on the motion for sanctions. There, the assistant State's Attorney explained to the court that, according to his conversation with "the officer," he understood:

> "[T]here is a camera in the officer's vehicle. When he returned to the station, there was some
>
> sort of download process with the camera. There was a person at the police department, I

do not have that person's name and I don't have that person in court with me today. The officer tells me that he is in charge of downloading the videos and things of that nature. This person told Officer Foltyniewicz that the video was unavailable, that it did not work. That being the case, there was a camera, I understand, but there is not an actual video of the stop."

The State represented that Officer Foltyniewicz was present in court and had an independent recollection of the events relating to the stop and arrest of defendant. Therefore, the State argued, the fact that there was no recording available did not warrant a sanction of rescission. Instead, the State asserted, the absence of a video should be considered as relevant to the weight of the evidence.

Before ruling, the court sought clarification that, according to the State, the field sobriety test video was "in some fashion technically" unavailable because it did not properly download. The State agreed, and defense counsel represented that he, too, was present when Officer Foltyniewicz explained that "he didn't know why there was no video. He has no knowledge."

The court denied the motion for sanctions, noting that there was no evidence presented that there was an intentional or willful destruction of any evidence. However, the court noted:

"[I]t is something that I think I can and, frankly, I will consider [at the rescission hearing]. There is a video. I have no explanation as to why that video doesn't exist. Again, I am not making any finding that it was willful or intentional, but the impact of that is going to be something that I can and I will consider during the course of the hearing. *** I will consider that failure to produce that video. I think it was something that was in the possession of law enforcement. It doesn't exist and there is no explanation for that, and that's a factor I can and will consider."

B. Rescission Hearing

The rescission hearing commenced immediately after the court denied defendant's motion for sanctions. Defendant called as her first witness Officer Foltyniewicz, who testified to the circumstances surrounding his stop of defendant. In sum, Foltyniewicz testified that his attention was drawn to defendant's vehicle when defendant's vehicle slightly straddled a lane while at a stop light. He subsequently followed defendant through a construction zone where another lane had been added and orange "horses" blocked certain areas, and he witnessed her vehicle change lanes without signaling. At that time, Foltyniewicz activated his vehicle's emergency lights and defendant pulled over in an appropriate manner. After approaching the vehicle, Foltyniewicz smelled alcohol; defendant told him that her husband (in the passenger seat) had consumed alcohol that evening. Foltyniewicz did not notice anything unusual about defendant's speech, nor did he observe anything else about her that raised suspicion. However, he asked her to step out of the vehicle to determine whether she, as opposed to her husband, had consumed alcohol. Defendant exited the vehicle in an appropriate manner, with no apparent balance problems; she did not use the vehicle for support; she walked to the back of the vehicle without support; and she did not wobble, sway, or fall over. Foltyniewicz detected the odor of alcohol coming from defendant's breath, and he asked defendant to perform four field sobriety tests. Ultimately, he concluded that she failed three of the tests. Specifically, on the walk-and-turn test, defendant did not stumble or fall, but Foltyniewicz observed that defendant did not touch toe-to-heel, raised her arms more than six inches from her body, and did not follow instructions on the turn. Further, on the one-leg-stand test, defendant put her foot down before Foltyniewicz told her to stop. Finally, on the breath test, defendant formed a tight seal with her lips around the tube, but did not blow as instructed and, therefore, no results were obtained. According to Foltyniewicz, defendant admitted that she had earlier consumed one glass of wine.

Foltyniewicz arrested defendant. In his testimony, Foltyniewicz made no mention of the alleged video recording.

Thereafter, defendant, a home health care nurse, testified to her version of the events, including her belief that she did not fail the sobriety tests. Specifically, defendant testified that she walked the walk-and-turn test as instructed, including touching heel-to-toe, and that she had her hands at her sides during the one-leg-stand test, but, because she was "very nervous," lights were shining, and "a lot was going on," she did not know whether she held her arms more than six inches from her body. Defendant denied telling Foltyniewicz that she consumed any alcohol that night.

In closing, defense counsel argued that the video would have been dispositive of the case because, while Foltyniewicz testified that defendant failed the sobriety tests, defendant credibly testified that she passed the tests. In response, the State argued that Foltyniewicz testified more credibly to the events than defendant and that defendant offered no explanation for the problems with her driving that initially brought her to Foltyniewicz's attention.

The court granted defendant's petition to rescind the suspension. The court noted that Foltyniewicz was "very credible" in its mind. However:

> "The concern that I have, the issue in my mind, is the field sobriety tests. Again, I think the officer testified credibly as to the defendant's performance ***. I found the officer to be more credible [than defendant]. The question I have, and this is troubling to me, is that *there is a tape*. It was inadvertently not recorded, destroyed, I don't know if you want to call it that, which is what the cases say. But *there was a tape recording* that we don't have. It wasn't intentional based upon what's been represented to me, but through no fault of the defense, they were diligent in trying to get a tape. I do not think that it automatically

warrants reversal. If it was intentional, perhaps it would be different. But that's where I come down.

If it was a case where there was *no tape*, this call would be easy for me. I think the officer testified more credibly, but the absence of *the tape* raises a concern in my mind. Again, I don't find that it was intentional, it's inadvertent, but it's in control of the State. There's principles of civil law that indicate that if there's evidence that was in the possession of one party and it's destroyed, whether it's inadvertent or not, there is an inference to be drawn that it was detrimental to that party. Again, I don't know that, but that's the concern that I have is that *there was a tape* that the defense can't have, through no fault of theirs.

It's for that reason, and I am reluctant to do it, I don't know how to express that any better, reluctantly. The officer testified credibly. I think he behaved like a professional, but because of the absence of the tape, that it was inadvertently not recorded or destroyed, I am going to rescind the summary suspension." (Emphases added.)

After orally announcing its ruling, the trial court signed a preprinted summary suspension order form that was filled out by defense counsel. The order reflected that the court had ruled in defendant's favor and checked, as its reason for the decision, the option: "Officer Failed to Answer Defendant's Subpoena (Code 4250)."[1] Similarly, the circuit court clerk completed and signed a form

---

[1]The six other options the order form provides as reasons for rescinding the summary suspension include: (1) "No D.U.I. Arrest (Code 4230)"; (2) "No Warning Given (Code 4215)"; (3) "No Reasonable Grounds (Code 4220)"; (4) "Did Not Refuse Test (Code 4240)"; (5) "Not a B.A.C. of 0.08 or more (Code 4245)"; and (6) "Other (explain) _____ (Code 4255)."

notice to the Secretary of State, indicating that, after a hearing, the court had ruled to rescind defendant's summary suspension because "OFFC FAILED TO ANSWER." The State appeals.

## II. ANALYSIS

Statutory summary suspension hearings are civil. *People v. O'Connor*, 313 Ill. App. 3d 134, 136 (2000). A trial court's order to grant or deny a petition to rescind a statutory summary suspension is a final and appealable order. *Id.* In a statutory summary suspension hearing, the defendant bears the burden of establishing by a preponderance of the evidence a *prima facie* case for rescission.[2] *People v. Wear*, 229 Ill. 2d 545, 560 (2008); *People v. Hacker*, 388 Ill. App. 3d 346, 349 (2009). The burden then shifts to the State to produce evidence justifying the suspension. *Wear*, 229 Ill. 2d at 560. In reviewing a trial court's ruling on a petition to rescind a summary suspension, we defer to the trial court's findings of fact, reversing them only if they are against the manifest weight of the evidence, but review *de novo* the court's ultimate determination of whether the petition to rescind should be granted. *Id.* at 561-62; see also *People v. Tomczak*, 395 Ill. App. 3d 877, 880 (2009); *Hacker*, 388 Ill. App. 3d at 350.

---

[2]The defendant may challenge the suspension on four bases: (1) whether the defendant was placed under arrest for an offense under section 11—501 of the Code (625 ILCS 5/11—501 (West 2008)); (2) whether the officer had reasonable grounds to believe that the defendant was driving or in actual physical control of a motor vehicle while under the influence of alcohol, another drug, or both; (3) whether the defendant received the statutory motorist's warning and refused to complete the test or tests; and (4) whether the test or tests disclosed an alcohol concentration of 0.08 or more. 625 ILCS 5/2—118.1(b)(1) through (b)(4) (West 2008).

The State argues that the trial court's ruling was improper because, despite its denial of defendant's motion for sanctions, the court in fact sanctioned the State and granted the petition for rescission solely based on a video that was never created. The State argues that the court's ruling creates a new, "technical," nonexistent statutory factor for rescinding summary suspensions that is contrary to this state's public policy to keep public highways safe.

First, we are compelled to address the State's assertion that the court apparently did not understand that, as opposed to a video that existed and was lost or destroyed, "the video in question never came into existence." According to the State, the technical problem preventing a successful download equates to a video that never came into existence. However, the fact that a video could not be produced does not mean that a recording was not made. The court's understanding that the video camera in Foltyniewicz's car recorded the stop, but that the recording could not be produced because of a technical problem, is supported by the record. Specifically, at the hearing on the motion for sanctions, the State represented that there was a video camera in Foltyniewicz's car, that there was a downloading issue with the camera, and, consequently, that the video was unavailable. This assertion presupposes that there was a recording, because, if no recording was made, efforts to download would be unnecessary. Further, the State agreed with the court's characterization that the video was technically unavailable, and it did not assert to the court that, in fact, no recording was ever made. As such, we find unavailing the State's argument that the court effectively ruled that rescission is warranted whenever there is *no* tape recording of a stop. The court made no such ruling. Rather, noting that, if "there was *no* tape, this call would be easy for me," and that, "in the absence of *the* tape" (not *a* tape), it would rescind the suspension, the court simply concluded that there *was* a recording taken, but the State was unable to produce the recording. (Emphases added.)

Next, we disagree with the State's assertion that the trial court rescinded the suspension as a sanction. The record reflects that the court denied defendant's motion for rescission as a sanction for the video's absence. In doing so, it made clear that, where there was no suggestion that the State intentionally destroyed the video, rescission as a sanction was inappropriate. Further, the court clarified that it agreed with the *State's argument* on the motion for sanctions that, while it was inappropriate under these circumstances to grant rescission solely based on the absence of the video, it could consider the video's absence when weighing the evidence. Nothing in the court's subsequent ruling on the petition to rescind reflects to us that the court departed from its position regarding sanctions.[3]

---

[3]In light of our conclusion that the court did not rescind the suspension as a sanction, we conclude that, despite its selection on the order, the court inherently granted the rescission because the video's contents would have been relevant to the issue of reasonable grounds. While the court signed the order form (prepared by defense counsel) that marked the officer's "failure to answer" as the basis for its decision, we do not believe that the selection appropriately fits the court's oral findings. For example, an officer's "failure to answer" likely pertains to cases where an officer fails to answer a subpoena to *appear* at the hearing and, even then, rescission is not automatic. See 625 ILCS 5/2—118.1 (West 2008) ("[T]he hearing may be conducted upon a review of the law enforcement officer's own official reports; provided however, that the person may subpoena the officer. Failure of the officer to answer the subpoena shall be considered grounds for a *continuance* if in the court's discretion the continuance is appropriate." (Emphasis added.)). Under the facts here, reading the court's selection of an officer's "failure to answer" as akin to a statement that it based its decision to rescind solely on the officer's failure to produce the video *would* suggest that rescission

As such, we disagree with the State that the court ultimately granted rescission based solely on the missing video. Indeed, the court's ruling reflects that it considered and weighed both defendant's and Foltyniewicz's testimony. The court determined that Foltyniewicz testified credibly. However, the court also discussed the general proposition that, when evidence in one party's control is missing or destroyed, an inference may be drawn that the evidence was detrimental to that party. Thus, in its process of weighing the in-court testimony, the court factored into its deliberations that the video would have spoken to the credibility of the testimony and presumptively would have weighed against the State. As such, although the court found Foltyniewicz more credible than defendant based solely on their testimony, the court implicitly determined that defendant's testimony (which, incidentally, it did not state was incredible), when bolstered by the presumption that the video would have been detrimental to the State, outweighed Foltyniewicz's testimony such that rescission was warranted. We also note that, in finding Foltyniewicz's testimony credible, the court inherently accepted his testimony that weighed in defendant's favor, *i.e.*, that she did not have slurred speech, had no apparent balance problems, did not use the vehicle for support, etcetera. We cannot conclude that the court's findings in this regard are against the manifest weight of the evidence. Giving deference to the court's findings that Foltyniewicz's testimony was outweighed by the evidence in

_____

was granted as sanction. Clearly, however, the court did *not* intend to impose rescission as a sanction here. Rather, as further explained below, we read the court's ruling as finding that the video would have been relevant to witness credibility on "reasonable grounds." Thus, although the failure to answer the subpoena for the video was part of the court's basis for rescission, the "reasonable grounds" option on the order form would have been the more appropriate selection, and we rely on the court's oral findings rather than the checked box.

defendant's favor and, accordingly, that there were no reasonable grounds to believe that defendant was driving under the influence of alcohol, we agree that rescission was warranted.

The cases relied upon by the State do not warrant a different conclusion.[4] For example, in *People v. Camp*, 352 Ill. App. 3d 257, 258 (2004), the defendant moved to dismiss DUI charges against him, arguing that he could not receive a fair trial because the State lost a videotape of his field sobriety tests. The trial court granted the request, and this court reversed on the basis that dismissal of the charges was an excessive sanction for the inadvertent loss of the tape. *Id.* Nevertheless, while we found dismissal of the charges to be a sanction disproportionate to the discovery violation, we stated that it *would* be appropriate for the factfinder to consider "less drastic" options, such as that "the absence of the videotape requires an inference that the tape's contents are favorable to defendant." *Id.* at 262. Here, the trial court *rejected* defendant's request for rescission as a sanction (similar to the defendant's request for outright dismissal of the charges in *Camp*) and, instead, proceeded to a hearing. At the conclusion of the hearing, and in accord with *Camp*, the trial court applied to its deliberations the "less drastic" option of inferring that the absent video contained contents favorable to defendant.

Similarly, *People v. Schambow*, 305 Ill. App. 3d 763 (1999), is in several respects distinguishable from the instant case. In *Schambow*, the defendant objected to the State's inadvertent destruction of audiotapes that contained police radio communications from the time of the defendant's DUI arrest. The trial court rescinded the defendant's summary suspension as a discovery sanction. Rejecting the defendant's due process argument, the appellate court reversed the rescission,

---

[4]The State moved to cite foreign authority. We granted the State's motion; however, we do not find it necessary to rely on the foreign authority.

finding, among other things, that the audiotapes would have held little exculpatory value on the question of whether the officer had reasonable grounds to believe that the defendant was operating a vehicle while under the influence of alcohol, whether the defendant refused to take a Breathalyzer test, or whether his BAC exceeded legal limits. *Id.* at 768. Here, in contrast, the court did not rescind the suspension as a sanction or prior to hearing, and we note that, unlike the audiotapes in *Schambow*, a video recording of defendant's performance on the field sobriety tests would be extremely relevant and potentially exculpatory on the question of reasonable grounds.

*People v. Leannah*, 72 Ill. App. 3d 504 (1979), also fails to impact our decision. In *Leannah*, a videotape of the defendant at the police station on the night of his arrest was accidentally destroyed. The trial court, before trial, dismissed the charges against the defendant as a sanction for the State's discovery violation. The appellate court reversed, rejecting the defendant's due process claims and finding the sanction too harsh under the circumstances. *Id.* at 508. Again, here, the trial court did not rescind the suspension as a sanction prior to hearing. Instead, the court held an evidentiary hearing and weighed the evidence. Accordingly, we disagree with the State that the foregoing cases hold that a missing video cannot justify rescission. Rather, the cases do not address the factual situation here, where the court did not dismiss charges or rescind because a video was missing, but, rather, applied a presumption to its weighing of the evidence.

Finally, we note that we also disagree with the State's assertion that the court's ruling here granted rescission on a "technicality." For example, this is not a situation where rescission was granted because an officer failed to forward to the clerk of the court a sworn report—a curable defect having no real prejudice to the defendant. See, *e.g.*, *People v. Dominguez*, 367 Ill. App. 3d 171 (2006). Instead, the court considered that a recording was made on the very issue disputed by the

parties, *i.e.*, whether reasonable grounds existed for Foltyniewicz to believe that defendant was driving while intoxicated. That video, which might have held exculpatory value for defendant, was unavailable. The court did not rescind the suspension as a sanction to the State, but it did inherently find that the information presumed to be on the video, coupled with defendant's testimony, outweighed the evidence in the State's favor.

In conclusion, we reject the State's argument on appeal that the trial court erred in rescinding defendant's summary suspension.

## III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.