2026 IL App (2d) 260033-U
No. 2-26-0033
Order filed March 20, 2026

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,
v. LEONEL K. URZUA, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable Reginald Campbell and Donald M. Tegeler, Jr., Judges, Presiding.
No. 25-CF-2940

JUSTICE MULLEN delivered the judgment of the court.
Justices McLaren and Birkett concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in granting the State's petition to deny defendant pretrial release and ordering defendant detained.

¶ 2   Defendant, Leonel K. Urzua, appeals from orders of the circuit court of Kane County granting the State's verified petition to deny him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2024)), as amended by Public Acts 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023) (we will refer to

these public acts collectively as the "Acts").[1] On appeal, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that: (1) the proof is evident or the presumption great that he committed the charged detainable offense; (2) he poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case; and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. We affirm.

¶ 3                              I. STATEMENT OF FACTS

¶ 4                                   A. Background

¶ 5      On December 18, 2025, defendant was charged by complaint with one count of possession of a firearm without a valid firearm owner's identification ("FOID") card (430 ILCS 65/2(a)(1) (West 2024)), a Class 3 felony; one count of aggravated unlawful possession of a weapon by a person under the age of 21 (720 ILCS 5/24-1.6(a)(2) (West 2024)), a Class 4 felony; and one count of aggravated unlawful possession of a weapon in a vehicle without a FOID card (720 ILCS 5/24-1.6(a)(1) (West 2024)), a Class 4 felony.

¶ 6      On January 4, 2026, the State filed a petition to detain. In support of its petition, the State alleged that defendant was charged with possession of a firearm without a FOID card (430 ILCS 65/2(a)(1) (West 2024)), a detainable offense. Additionally, defendant was charged with a felony offense other than a forcible felony for which, based on the charge or defendant's criminal history, a sentence of imprisonment without probation is required by law upon conviction, and defendant's

---

[1] Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code, has been referred to as the "Pretrial Fairness Act" and the "Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act." However, neither title is official. *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 n.1.

pretrial release posed a real and present threat to the safety of any person or the community. See 725 ILCS 5/110-6.1(a)(1) (West 2024). The State further alleged that defendant is a documented member of the Latin Kings street gang in Aurora. He has prior juvenile convictions for weapons offenses and has been to the juvenile department of corrections. Defendant had previously been adjudicated delinquent for burglary. The State also indicated that defendant was on a period of extended juvenile jurisdiction with a 4-year sentence at the Illinois Department of Corrections. In committing the instant offenses, defendant "fled from the police when the car he was in was disabled. The car he was in was stolen."

¶ 7                        B. Detention Hearing

¶ 8      That same day, the matter proceeded to a hearing on the State's petition. The State proffered a synopsis drafted by the arresting agency. The proffer offered the following information. On December 13, 2025, officers responded to a report of a person with a weapon. The caller advised that four occupants of a gray Ford Explorer brandished a firearm at him and asked him about his gang affiliation. Upon arrival, officers spoke with the victim, Gerardo Sandoval. Sandoval told officers that he was in a parking lot when the silver Explorer pulled up next to him, asked him his gang affiliation, and pointed a black firearm at him. Officers later attempted to stop the same vehicle. When the vehicle did not stop, officers pursued it until they were able to immobilize it using stop sticks. When the vehicle was immobilized, the four occupants fled. Defendant was apprehended a short distance from the vehicle. He was released without charges pending further investigation.

¶ 9      On December 17, 2025, defendant's phone was searched pursuant to a search warrant. Officers found a video of defendant holding a black handgun sent to him by another person. The

video was sent on December 13, 2025. The State submitted the video into evidence. The video shows defendant in the stolen Ford Explorer. At one point, he holds a gun to the camera.

¶ 10     Additionally, the State submitted into evidence a Public Safety Assessment (PSA) Report. The report indicated that defendant was rated as a two out of six on the "New Criminal Activity Scale" and a one out of six on the "Failure to Appear Scale." The report highlighted that defendant had no adult criminal convictions and suggested that if defendant was released, "pretrial supervision is not recommended due to lower scores on the risk scales." The PSA Report made no reference to defendant's juvenile criminal history.

¶ 11     Following the proffer of the synopsis, video recording, and PSA Report, the matter proceeded to argument. In support of its petition, the State noted that defendant had just turned 19 years old and the instant offense was his third gun offense. At the time of the instant offense, defendant was on extended juvenile jurisdiction for a Class 2 burglary charge. The burglary involved a stolen vehicle, as in the present matter. Defendant had a prior juvenile gun offense that was revoked and for which he served time in the juvenile department of corrections. The State further indicated that defendant is an active member of the Latin Kings street gang, as are his brother and father with whom he lives. Additionally, it highlighted that defendant is not legally allowed to own a firearm, and this is his third offense with a firearm.

¶ 12     The State argued that no conditions could mitigate the threat posed by defendant's release. It specifically identified that electronic home monitoring (EHM) would not be a suitable condition of release, as EHM would not prevent defendant from obtaining guns illegally. Further, it argued that "[c]ourt orders in the past have not stopped [defendant]," and living with his father and brother would be an unacceptable solution because defendant lived with them when he committed his juvenile offenses.

¶ 13    In response, defense counsel argued that the State failed to prove by clear and convincing evidence that the proof is evident or presumption great that defendant committed the offense, that defendant posed a real and present threat to the safety of any person or the community, and that there were no conditions that could mitigate any perceived threat.

¶ 14    With respect to the first argument, that the State failed to prove that defendant committed the instant offense, defense counsel argued that there was no indication that the person who called the police at the time the alleged conduct occurred identified defendant as being in the car or holding a gun. That information was only obtained after a search of defendant's phone was conducted pursuant to the search warrant. Additionally, a gun was not recovered from the scene. Defense counsel further argued that the gun in the video might not have been a working firearm.

¶ 15    Defense counsel next argued that the State failed to prove that defendant posed a real and present threat to the safety of any person or the community. Defense counsel stated that defendant was only 19 years old, and as such, his brain was still developing.

¶ 16    Finally, defense counsel argued that there were conditions that could mitigate the threat posed by defendant's release. Defense counsel noted that if released, defendant could live with his mother. Defense counsel also argued that the trial court could impose conditions such as "pretrial safety monitoring."

¶ 17    The State addressed defendant's arguments, noting that the address provided by defense counsel as belonging to defendant's mother is the same address listed in prior search warrants. A gun had previously been recovered from defendant at that address. Defendant had been with his father and brother at that address. Additionally, the State noted that the video of defendant clearly showed a real gun that matched the description of the gun described by the complaining witness in the instant matter.

¶ 18 Following argument by the parties, the trial court granted the State's petition to detain. In issuing its oral ruling, the trial court determined that the State had proven by clear and convincing evidence that defendant committed a detainable offense. It noted that it had reviewed the video presented by the State, which showed defendant in the vehicle with a black handgun matching the description provided by Sandoval. Defendant was also seen in the vehicle by police officers. Additionally, the trial court found that defendant posed a real and present threat to the safety of any person or the community. It stated that "[w]hat we have here is a young man that in his short life, in his short life, has been charged with some very serious offenses and has been found liable for those offenses." These include gun offenses and burglary. The trial court reasoned that "he has not proven that he has the ability to abide by court orders and he has shown to be a danger to the community at large based on the seriousness of these offenses." Accordingly, the trial court also determined that no conditions could mitigate the threat posed by defendant's pretrial release. Because defendant lives with his father and brother, and had previously obtained weapons in the home before, the trial court did not believe that EHM could mitigate the potential for defendant to commit crimes if ordered released with conditions. The court entered a written order summarizing its oral findings.

¶ 19                                C. Motion for Relief

¶ 20 On January 6, 2026, defendant filed a motion for relief from the order detaining him. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). In the motion, defendant again argued that the State failed to prove by clear and convincing evidence that he committed a detainable offense, as there was no firearm recovered by police related to this offense and, from the video, it would be impossible to discern if the firearm was real and not a prop or toy. Defendant further alleged that

the trial court erred in finding that he posed a real and present threat to the safety of any person or the community and that no conditions could mitigate the risk posed by his release.

¶ 21    A hearing on defendant's motion was held on January 14, 2026. At the outset, the State clarified that defendant had adjudicated delinquencies for a possession of firearms charge and a burglary charge. He was on extended juvenile jurisdiction for possession of a firearm by a gang member. Defense counsel, relying on the motion for relief, reiterated the arguments made therein.

¶ 22    Following argument of the parties, the trial court denied defendant's motion for relief. The trial court noted that although the evidence was circumstantial, there was sufficient evidence to prove by clear and convincing evidence that defendant had committed the charge of possession of a firearm. Further, it highlighted that defendant is "not eligible to possess a gun in any way, shape, or form based upon his record, based upon his age, and other things in that respect."

¶ 23    On January 6, 2026, defendant filed a notice of appeal. The court appointed the Office of the State Appellate Defender (OSAD) to represent defendant. The State filed a response in opposition to the appeal.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, defendant argues that the trial court erred in granting the State's petition to detain and denying his motion for relief because the State failed to prove by clear and convincing evidence that he committed a detainable offense, that his pretrial release posed a real and present threat to the safety of any person or the community, and that no condition or combination of conditions could mitigate the risk posed by his pretrial release.

¶ 26    Article 110 of the Code, as amended by the Acts, abolished traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2024). In Illinois, all persons charged with an offense are eligible for pretrial

release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2024). To detain a defendant, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a detainable offense (725 ILCS 5/110-6.1(e)(1) (West 2024)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2024)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2024)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of the defendant's willful flight (725 ILCS 5/110-6.1(e)(3) (West 2024)). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The Code further requires that "[d]ecisions regarding release, conditions of release, and detention prior to trial must be individualized, and no single factor or standard may be used exclusively to order detention." 725 ILCS 5/110-6.1(f)(7) (West 2022).

¶ 27 In this case, no live testimony was presented. The parties proceeded solely by proffer and video evidence. Accordingly, our review of the trial court's factual findings and its detention orders is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Under *de novo* review, a reviewing court "perform[s] the same analysis that the trial [court] would perform using the proper standards." *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 69.

¶ 28 Defendant first argues that the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that he committed a detainable offense. In support, defendant claims that the video evidence provided by the State was insufficient to prove that he was in possession of a firearm, given that it was "[t]wo seconds of a partial view of the object."

Defendant notes that the weapon was never recovered and therefore challenges the veracity of the witness and video identification of the object as a firearm. To further support this argument, defendant cites *People v. Crowder*, 323 Ill. App. 3d 710, 712 (2001) for the proposition that "an object that looks like a gun may actually be a toy or a realistic replica."

¶ 29    The quantum of evidence required to detain a defendant pending trial is less than what is required at trial to prove guilt beyond a reasonable doubt. See 725 ILCS 5/110-6.1(f)(2), (f)(4)-(f)(6) (West 2024); *People v. Santiago*, 2024 IL App (2d) 240499-U, ¶ 28. Here, defendant's concerns go to the weight of the evidence. Section 110-6.1(f)(2) of the Code (725 ILCS 5/110-6.1(f)(2) (West 2024)) expressly permits the parties to a detention hearing to present evidence by way of proffer based on reliable information, and this court has previously held that a police synopsis alone may be sufficient to sustain the State's burden. See, *e.g.*, *People v. Hill*, 2024 IL App (2d) 240436-U, ¶ 29; *People v. Mancilla*, 2024 IL App (2d) 230505, ¶ 24; *People v. Jones*, 2024 IL App (2d) 230546-U, ¶ 9; *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24.

¶ 30    Here, the proffered synopsis provided credible evidence from Sandoval that occupants in a vehicle pointed a gun at him. The vehicle was identified as a stolen Ford Explorer. The synopsis further provided that officers witnessed defendant fleeing the same vehicle. The video then showed defendant in the stolen Ford Explorer holding an object matching Sandoval's description of the firearm. Defendant asserts that the video alone is not sufficient to prove by clear and convincing evidence that the proof is evident or presumption great that he committed the offense. However, the evidence does not consist of the video alone. There is proffered testimony that is further corroborated by the video evidence.

¶ 31    Additionally, we find defendant's reliance upon *Crowder* to be misplaced. In *Crowder*, 323 Ill. App. 3d at 712-13, "[t]he issue [was] not the strength of the State's case," rather it was the

defendant's "ability to prepare for trial without being able to examine the evidence against him" after the firearm at issue had been destroyed by the arresting agency. Here, the evidence relied upon by the State is readily accessible to defendant and defendant is directly challenging the strength of the State's case. Given the record before us, we conclude that the State proved by clear and convincing evidence that that the proof is evident or the presumption great that defendant committed the charged offenses.

¶ 32    Defendant next argues that the trial court erred in finding that he poses a real and present threat to the safety of any person or persons in the community and that there were no less restrictive conditions than detention available to mitigate any threat posed by his release. Section 6.1(e)(2)-(3) of the Act requires a court to find not only that a defendant subject to a detention petition "poses a real and present threat to the safety of any person or persons or the community" but that "no condition or combination of conditions" can mitigate that threat. 725 ILCS 5/110-6.1(e)(2)-(3) (West 2024). Although listed as separate findings in the statute, the two issues are inseparable. "[D]angerousness and conditions of release are two sides of the same coin; the nature and severity of the threat necessarily determine the nature and severity of the conditions that could—or could not—mitigate the threat." *People v. Romine*, 2024 IL App (4th) 240321, ¶ 16.

¶ 33    Under the Code, factors that a court may consider in making a determination of dangerousness, *i.e.*, that a defendant poses a real and present threat to any person or the community, include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence, involved a weapon, or was a sex offense; (2) the history and characteristics of the defendant, including whether he or she has a prior criminal history indicative of violent, abusive, or assaultive behavior; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or

attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether, at the time of the current offense or any other offense, the defendant was on probation, parole, or any other form of supervised release from custody; and (9) any other factors, including those in section 110-5 of the Code (725 ILCS 5/110-5 (West 2024)), the court deems to have a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g) (West 2024).

¶ 34    Here, the nature and circumstances of the offenses included defendant's possession of a firearm which he could not own legally. 725 ILCS 5/110-6.1(g)(1) (West 2024). Although defendant does not have an adult criminal history, his juvenile criminal history involves weapons offenses and burglary. 725 ILCS 5/110-6.1(g)(2), (7) (West 2024). Additionally, at the time of this offense, defendant was subject to extended juvenile jurisdiction. 725 ILCS 5/110-6.1(g)(8) (West 2024). Further, defendant poses a threat to the community at large, as he was in the vehicle when he and the passengers approached an individual, pointed a gun at him, and questioned his gang affiliation. 725 ILCS 5/110-6.1(g)(3) (West 2024). Considering this record, we conclude that the State proved by clear and convincing evidence that defendant poses a real and present threat to the victims and the community at large.

¶ 35    Defendant argues that the trial court "could have imposed a few conditions that could mitigate any purported danger." He notes that he could live with his mother, that he had a low pretrial assessment score, that the PSA Report recommended that he be released, and that EHM was an available condition of release.

¶ 36 In determining which conditions of pretrial release, if any, will ensure the safety of any person or persons or the community, the trial court may consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release. 725 ILCS 5/110-5(a)(1)-(5) (West 2024). The history and characteristics of a defendant include his or her "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings" as well as "whether, at the time of the current offense or arrest, [he or she] was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for any offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A)-(B) (West 2024).

¶ 37 Here, the nature and circumstances of the charged detainable offense included defendant's illegal possession of a weapon. Sandoval's statement to police is corroborated by the video obtained from defendant's phone. Defendant's serious criminal history as a juvenile includes burglary and multiple weapons offenses, including where a gun was recovered from defendant in his home. Because defendant has previously been found illegally possessing weapons in his home, we agree with the State and the trial court in assessing that EHM would not be an effective condition to mitigate the risk that defendant commit similar crimes if he were granted pretrial release. Defendant has demonstrated a disregard for orders of the court and the laws of the State.

¶ 38    Hence, we conclude that the State met its burden of proving by clear and convincing evidence that no condition or combination of conditions would mitigate the real and present threat defendant poses to his victims or the community.

¶ 39                                 III. CONCLUSION

¶ 40    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 41    Affirmed.